IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

MOSES ENTERPRISES, LLC,

        Plaintiff,

v.                                                                      Case No.: 3:19-cv-00477

LEXINGTON INSURANCE COMPANY
and AIG CLAIMS, INC., aka AIG
COMMERCIAL PROPERTY CLAIMS,

        Defendants.

## MEMORANDUM OPINION AND ORDER

Pending is Plaintiff's Motion Challenging "Confidential" Designation of Documents. (ECF No. 76). Defendants filed a response to the motion, to which Plaintiff filed a reply. (ECF Nos. 79, 82). The Court **GRANTS, in part,** and **DENIES, in part,** the motion as set forth in the below memorandum opinion and order.

### I.    Relevant Facts

This is an insurance coverage and bad faith action. (ECF No. 1). In June 2020, Defendants Lexington Insurance Company and AIG Claims, Inc. ("AIG") filed a motion for protective order in advance of producing in discovery certain documents which they asserted contained private personal information of employees and/or were confidential and proprietary in nature, including an underwriting file, employee performance evaluations, claims handling manual, and list of bad-faith complaints for the last five years. (ECF No. 45 at 1). The Court granted Defendants' request for a protective order and

1

entered the Court's standard protective order with certain modifications. (ECF No. 51). The protective order that was entered stated that, if a party has a good faith belief that certain documents or other materials subject to a discovery request were confidential and should not be disclosed other in connection with this action, the party shall mark the document or other material "CONFIDENTIAL." (*Id.* at 1). The protective order further specified that the parties "must take care to limit any such designation to specific documents or materials that qualify for protection under appropriate standards," and "[m]ass, indiscriminate, or routine designations are prohibited." (*Id.* at 2). A party disputing whether a document or other material should be marked confidential could file an appropriate motion after attempting to resolve the dispute with the designating party. (*Id.*).

Plaintiff filed the instant motion, arguing that Defendants improperly designated documents that they produced as confidential under the protective order. (ECF No. 76). The following documents are at issue:

1. ***Claims Handling Guidelines***
   Bates numbers "DEF_000122" through "DEF_000169"

   Plaintiff states that these documents are not confidential because they are general guidelines and procedures to be followed by claims representatives in opening files and administering claims, and they appear to be clerical in nature to ensure uniform processing and documenting of claims. (ECF No. 77 at 5). Plaintiff contends that these documents have no commercial value such that their disclosure would result in Defendants' financial loss or competitive disadvantage. (*Id.*).

   Defendants respond that courts have routinely held that insurance claims manuals can qualify as trade secrets or confidential proprietary information entitled to protection from public disclosure. (ECF No. 79 at 4). Defendants note that the guidelines were prepared for use by AIG Claims employees and are not disseminated outside of the company. (*Id.* at 5). They argue that, if the guidelines are disclosed outside of this litigation, competitors could appropriate the unique procedures and techniques without making the substantial investment that AIG Claims made in developing them. (*Id.*).

2

In reply, Plaintiff argues that the documents contain mundane instructions and information that could hardly be considered a trade secret coveted by competitors. (ECF No. 82 at 1).

2. *Employee Performance Reviews*
   Bates numbers "DEF_000668" through "DEF_000847"

Plaintiff contends that the performance reviews of the employees who handled Plaintiff's insurance claim are not confidential because the documents do not contain personal information other than the names of the employees and reviewers, and they are all positive in nature. (ECF No. 77 at 6).

Defendants argue that the performance reviews are personnel records, which should be treated as confidential to protect the privacy concerns of the two non-party employees who handled Plaintiff's claim. (ECF No. 79 at 8). They further argue that unrestricted disclosure of performance evaluations would have a chilling effect on the candid evaluation of employees and degrade employees' trust in employers' ability to safeguard their private information. (*Id.*). Defendants assert that there is no prejudice to Plaintiff in designating these documents as confidential. (*Id.* at 9).

In reply, Plaintiff notes that none of the documents contain information such as salaries, social security numbers, medical information, or even negative information about the employees. (ECF No. 82 at 1). Therefore, Plaintiff maintains that the documents are not confidential.

3. *List of Bad Faith Complaints*
   Bates numbers "DEF_000849" through "DEF_000859"

Plaintiff asserts that these documents contain a list of lawsuits in which Lexington Insurance was involved in litigation, and they contain only publicly-available information such as the case style and jurisdiction. (ECF No. 77 at 6-7). Plaintiff notes that there is no confidential information, such as the terms of settlements, within the documents. (*Id.* at 7).

Defendants argue that they properly designated the spreadsheet under the protective order because they relied on internal information to compile the spreadsheet of bad-faith complaints that were filed against Defendants in the past five years. (ECF No. 79 at 7). They state that competitors could use this information, which has been compiled into an easily-accessible format, to harm Defendants as shortcut to conducting their own research. (*Id.*). Defendants do not dispute that the information contained in the spreadsheet is publicly-available. (*Id.*). However, like the performance

3

reviews, Defendants state that Plaintiff suffers no harm from the confidential designation of these documents. (*Id.*).

Plaintiff states in its reply that Defendants' argument that the list of lawsuits must be confidential because it would cause embarrassment if Defendants' pattern and practice of bad faith became known to their competitors is not grounds for confidentiality under the protective order. (ECF No. 82 at 2).

4. ***Underwriting Documents***
Bates numbers "DEF_000860" through "DEF_0001242"

Defendants argue that these documents, which only consist of a small portion of the 382-page underwriting file, were designated as confidential because they concern the calculation of premiums, as well as pricing and modeling results/reports that are proprietary. (ECF No. 79 at 5-6, 7).

Plaintiff concedes that, if the documents contained information regarding how Defendants calculate premiums, Plaintiff would have no objection to the confidential designation. (ECF No. 77 at 7). However, Plaintiff states that the documents do not contain any such information that would be useful to competitors. (*Id.*). Plaintiff maintains that the documents do not actually contain any information related to calculating premiums. (ECF No. 82 at 2). Rather, Plaintiff states that some of the documents are merely emails between employees, stating to "work on the account." (*Id.*).

II. **Discussion**

The type of protective order entered in this case is often referred to as a "blanket" or "umbrella" protective order, which is entered in advance of discovery and applied broadly. *In re Am. Med. Sys., Inc. Pelvic Repair Sys. Prod. Liab. Litig.*, No. 2:12-MD-2325, 2012 WL 2601880, at *4 (S.D.W. Va. July 5, 2012). "Often, as in this case, rather than seeking protective orders each time the need arises, parties agree to a blanket protective order that permits them to designate documents containing confidential business information." *Haas v. Golding Transp. Inc.*, No. 1:09CV1016, 2010 WL 1257990, at *5 (M.D.N.C. Mar. 26, 2010) (markings and citation omitted) (citing *Factory Mut. Ins. Co. v. Insteel Indus., Inc.*, 212 F.R.D. 301, 303–04 (M.D.N.C.2002) (describing "'blanket'

4

protective order [as one that] 'permits the parties to protect documents that they in good faith believe contain trade secrets or other confidential commercial information'")).

Another division of this Court has stated that "[u]mbrella protective orders have their origin in Rule 26(c), a foundation which is often ignored by litigants." *In re Am. Med. Sys., Inc. Pelvic Repair Sys. Prod. Liab. Litig.*, 2012 WL 2601880, at *6. Such orders are "more in the nature of an agreement between the parties as to how discovery that one party seeks, and the other resists because of confidentiality concerns, will be handled without court intervention." *Id.* As in this case, "[c]ourts regularly enter such orders either without a showing of good cause, in which case the party who later seeks to keep information confidential will bear the burden of showing good cause, or based on a general good cause determination." *Haas*, 2010 WL 1257990, at *5 (markings and citation omitted); *Longman v. Food Lion, Inc.*, 186 F.R.D. 331, 333 (M.D.N.C. 1999) ("Rule 26(c) allows a court to issue a protective order on a showing of good cause. If the parties agree to a protective order and it is entered without a showing of good cause, the party who later seeks to keep information confidential will bear the burden of showing good cause. However, if the party seeking protection was required to show good cause initially, the burden will be on the party seeking modification of the order."). With those legal principles in mind, the Court considers the documents at issue.

### A. *Claims Handling Guidelines*

As noted, Defendants argue that the AIG Property Casualty Claims Handling Guidelines qualify as trade secrets or confidential proprietary information. By contrast, Plaintiff states that the manual contains nothing more than mundane instructions to ensure uniform processing and documenting of claims, and it has no commercial value to competitors.

5

In determining whether documents contain confidential commercial information or trade secrets, this Court has considered the following factors: "(1) the extent to which the information is known outside of [the] business; (2) the extent to which it is known by employees and others involved in [the] business; (3) the extent of measures taken by [the business] to guard the secrecy of the information; (4) the value of the information to [the business] and to [its] competitors; (5) the amount of effort or money expended … in developing the information; (6) the ease or difficulty with which the information could be properly acquired or duplicated by others." *Massey Coal Servs., Inc. v. Victaulic Co. of Am.*, 249 F.R.D. 477, 482 (S.D.W. Va. 2008) (markings and citations omitted).

Courts within the United States Court of Appeals for the Fourth Circuit ("Fourth Circuit") have held that insurance claims manuals can qualify as confidential information that falls within the ambit of a protective order. *Anderson v. Reliance Standard Life Ins. Co.*, No. WDQ-11-1188, 2012 WL 32568, at *5 (D. Md. Jan. 5, 2012), *objections overruled*, 2012 WL 835722 (D. Md. Mar. 9, 2012) ("I am satisfied that an insurance company's claims manual is the type of commercial information that warrants a confidentiality agreement when it is produced for discovery."); *Paull Assocs. Realty, LLC v. Lexington Ins. Co.*, No. 5:13-CV-80, 2014 WL 12596397, at *3 n.1 (N.D.W. Va. Jan. 9, 2014) ("The Court is well aware that claims manuals are often propriety in nature. Accordingly, should the Defendant so request, the Court will consider entering a protective order to provide adequate protections for Defendant's confidential or proprietary materials."); *APL Corp. v. Aetna Cas. & Sur. Co.*, 91 F.R.D. 10, 14–15 (D. Md. 1980) (ordering production of claims manual, but stating that "the confidentiality of defendant's Claims Manual can be preserved if the relevant portions are produced subject to the terms of an appropriate protective order. Accordingly, those portions of defendant's claims manual dealing with

defendant's investigative procedures with respect to fidelity bond claims are hereby ordered to be produced, subject to an appropriate protective order submitted by the parties and signed by this Court."); *Williamson v. Liberty Mut. Fire Ins. Co.*, No. 3:15-CV-07812, 2015 WL 8489980, at *2 (S.D.W. Va. Dec. 9, 2015) (ordering production of claims manuals "[n]ow that a protective order is in place"); *Cf. Guessford v. Pennsylvania Nat. Mut. Cas. Ins. Co.*, No. 1:12-CV-260, 2013 WL 2242988, at *8 (M.D.N.C. May 21, 2013) ("In this case, Plaintiff has contested Defendant's ability to show that the claims manual-type materials within the documents in question actually represent confidential commercial information and, for reasons previously discussed, Defendant has failed to meet that burden.").

In this case, while Plaintiff might view the Claims Handling Guidelines as mundane, they provide very detailed, specific step-by-step instructions that AIG has developed regarding its property and casualty insurance claims. Moreover, every page of the Claims Handling Guidelines expressly state that the documents are proprietary and intended for internal use only by employees of AIG's Property Casualty Division. The documents are copyrighted and specify that "[u]authorized disclosure, dissemination, copying, or other use of this material without the express written permission of AIG is strictly prohibited." The fact that AIG has gone to such measures to preserve the confidentiality of its claims manual weighs in favor of its designation under the protective order. *See, e.g., Guessford*, 2013 WL 2242988, at *9 (citing *Bertelsen v. Allstate Ins. Co.*, 2011 S.D. 13, 796 N.W.2d 685) (noting that "Defendant presented no evidence (or even proffers of evidence) that it took *any* steps to protect the confidentiality of the documents in question" and the plaintiff presented evidence that Defendant took no such action unlike in *Bertlesen* in which a state court found that an insurer's claims manual and

training materials contained trade secrets or other confidential material based on the fact that they contained a statement of confidentiality that the materials were exclusively for internal use and could not be distributed outside of the company without express permission of the insurer).

Therefore, after examining the documents and weighing both parties' arguments, the Court **DENIES** Plaintiff's motion to redesignate the claims manual as non-confidential.

### B. *Employee Performance Reviews*

Defendants argue that they designated the performance reviews of the employees that handled Plaintiff's claim as confidential to protect the privacy of the non-party employees, and they contend that Plaintiff fails to allege any harm resulting from the confidential designation. Plaintiff disputes that the reviews are confidential on the basis that they do not contain any personal information other than the employees' names and they consist of positive reviews. Plaintiff argues that the harm in designating the documents as confidential is that it forces Plaintiff to comply with the recordkeeping and other burdensome requirements of the protective order for documents which they do not consider to be confidential.

The Court agrees that the performance reviews are generally positive and are not nearly as sensitive as other contents of an employee's personnel file, which may include wage and tax documents, medical records, family and beneficiary information, and other materials. However, the performance reviews indeed contain personal employment-related information concerning non-party employees. While there is not a great deal of authority on the matter, district courts within the Fourth Circuit have concluded that public disclosure of the contents of personnel files, including employee performance

8

reviews, invoke privacy and public policy concerns. *Marlow v. Chesterfield Cty. Sch. Bd.*, No. 3:10CV18-DWD, 2010 WL 3660770, at *5, *5 n.4, *6, *6 n.5 (E.D. Va. Sept. 15, 2010); *Cason v. Builders FirstSource-Se. Grp., Inc.*, 159 F. Supp. 2d 242, 247–48 (W.D.N.C. 2001) ("[T]here is a strong public policy against the public disclosure of personnel files […] However, where the files sought are those of employees whose action or inaction has a direct bearing on the Plaintiff's claims or Defendant's affirmative defenses and especially where, as here, the court has issued an appropriate confidentiality order, personnel files are subject to discovery..") (citing *Blount v. Wake Elec. Membership Corp.*, 162 F.R.D. 102, 105-06 (E.D.N.C.1993) ("It cannot be denied that personal privacy and accurate employee evaluations are important public policy concerns.")); *Reeves v. Wayne Cty. Bd. of Educ.*, No. 3:20-CV-00423, 2020 WL 6688863, at *2–3 (S.D.W. Va. Nov. 12, 2020); *Knowledge Learning Corp. v. Maloney*, No. CV MJG-07-3234, 2008 WL 11363658, at *5 (D. Md. July 31, 2008) (stating in the context of denying a motion to compel that "Courts recognize special protections for employees' performance reviews to protect the honest and candid appraisals of the abilities of the employees.") (citation and markings omitted).

Therefore, the Court **DENIES** Plaintiff's motion to redesignate the employee performance reviews as non-confidential.

### C. *List of Bad Faith Complaints*

Regarding the spreadsheet of bad faith complaints, Defendants offer no dispute that the document is composed of publicly-available information, such as jurisdiction, case number, and case style. Therefore, the Court finds that Defendants have not shown good cause for the confidential designation of these documents under the protective order. The Court **GRANTS** Plaintiff's motion to redesignate the spreadsheet of bad faith

complaints as non-confidential. Defendants are **ORDERED** to file an amended discovery response producing the spreadsheet without the confidential designation.

### D. Underwriting File

Defendants contend that they only designated as confidential the portions of the underwriting file that related to the calculation of premiums and pricing and modeling results/reports that are proprietary. However, Plaintiff argues that the documents do not actually contain any pricing information. In doing so, Plaintiff focuses merely on a cover email which attached the relevant information. Reviewing the documents, the Court finds that the portion of the underwriting file at issue contains confidential proprietary commercial information. Therefore, the Court **DENIES** Plaintiff's motion to redesignate the limited portion of the underwriting file at issue as non-confidential.

It is so **ORDERED**. The Clerk is instructed to provide a copy of this order to all counsel of record.

**ENTERED**: December 22, 2020

Cheryl A. Eifert
United States Magistrate Judge