IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

**MOSES ENTERPRISES, LLC,**

      **Plaintiff,**

**v.**　　　　　　　　　　　　　　　**Case No.:  3:19-cv-00477**

**LEXINGTON INSURANCE COMPANY
and AIG CLAIMS, INC., aka AIG
COMMERCIAL PROPERTY CLAIMS,**

      **Defendants.**

## MEMORANDUM OPINION and ORDER

Pending before the Court are Plaintiff's Motion to Compel and for Sanctions, Plaintiff's Second Motion to Compel and for Sanctions, Defendants' motions for protective orders, and Plaintiff's Consolidated Motion to Strike the Motions of Each Defendant for a Protective Order and for Additional Time to Respond. (ECF Nos. 104, 106, 109, 110, 113). The Court **GRANTS, in part,** and **DENIES, in part,** Plaintiff's motions to compel and for sanctions and Defendants' motions for protective order, (ECF Nos. 104, 106, 109, 110), and **DENIES** Plaintiff's Consolidated Motion to Strike the Motions of Each Defendant for a Protective Order and for Additional Time to Respond, (ECF No. 113).

## I.  Relevant Facts

Plaintiff served Fed. R. Civ. P. 30(b)(6) ("30(b)(6)") deposition notices on Defendants, and Defendants objected by letter to Plaintiff. (ECF Nos. 104-1, 104-2 at 1, 105 at 1). The parties met and conferred by telephone, and they set a mutually agreeable

date of December 16, 2020 for the video depositions, but they did not agree on the scope of the 30(b)(6) topics. (ECF Nos. 105 at 2, 106-2). Defendants' counsel suggested holding another conference to discuss the issue. (ECF Nos. 104-3 at 1, 105 at 2). However, Plaintiff filed amended 30(b)(6) notices with the agreed upon date, but the same deposition topics to which Defendants objected. Thus, Defendants advised Plaintiff on December 9, 2020 that they intended to move for protective orders and would not be producing witnesses for the 30(b)(6) depositions on December 16, 2020. (ECF No. 104-4).

The parties also agreed that Plaintiff would depose AIG Claims, Inc., ("AIG"), employees Jennifer Yahn ("Yahn") and Kevin Bidney ("Bidney") on December 21, 2020. However, on December 16, 2020, Defendants advised Plaintiff that Yahn was quarantined due to COVID-19 exposure. Defendants asked to reschedule Yahn and Bidney's depositions for a date in January 2021 to allow counsel to be present in person to prepare the witnesses and defend their depositions. (ECF No. 106-3, 106-5). Plaintiff did not agree to reschedule the depositions, believing that the witnesses' preparation with counsel, just like the depositions themselves, could be conducted by video, as there was no indication that Yahn was sick or that there was any issue with Bidney appearing. (ECF Nos. 106-4; 107 at 3, 4, 4 n.3).

On December 18, 2020, Plaintiff filed a Motion to Compel and for Sanctions regarding Defendants' failure to produce witnesses for the 30(b)(6) depositions. (ECF No. 104). Plaintiff argued that Defendants violated the Federal Rules of Civil Procedure by not producing witnesses nor presenting the matter to the Court. (ECF No. 105 at 3). Plaintiff quoted this Court's decision in *Robinson v. Quicken Loans, Inc.*, No. 3:12-CV-00981, 2013 WL 1776100, at *3 (S.D.W. Va. Apr. 25, 2013) in which the Court explained that "[w]hen a corporation objects to a notice of Rule 30(b)(6) deposition, the proper

2

procedure is to file a motion for protective order" and "[u]nless a motion for protective order is pending, a failure described in Rule 37(d)(1)(A) is not excused on the ground that the discovery sought was objectionable." (*Id.*). Plaintiff further noted that the Court stated in *Robinson* that "once a Rule 30(b)(6) deposition notice is served, the corporation bears the burden of demonstrating *to the court* that the notice is objectionable or insufficient. Otherwise, the corporation must produce an appropriate representative prepared to address the subject matter described in the notice." (*Id.*). Finally, Plaintiff quoted the Court's directive that "[t]he corporation cannot simply decide on its own to ignore the notice" or file objections in lieu of a motion for protective order. (*Id.*). Therefore, Plaintiff asserted that the Court should compel Defendants to produce witnesses for the 30(b)(6) depositions, as well as impose sanctions for Defendants' violation of the Federal Rules of Civil Procedure. (*Id.*).

Three days later, on December 21, 2020, Plaintiff filed a Second Motion to Compel and for Sanctions, this time regarding Defendants' failure to produce Yahn and Bidney for deposition. (ECF No. 106). Plaintiff asserted that the depositions were scheduled to take place via Zoom conference, and there was no justification for canceling them. (ECF No. 107 at 4). Plaintiff claimed that Defendants' actions adversely affected its ability to obtain summary judgment on the issues of bad faith and legal malice. (*Id.* at 6). Thus, Plaintiff argued that the Court should impose "substantial" sanctions against Defendants, preclude Defendants from contesting the issues of bad faith and legal malice, and deny Defendants' Motion for Partial Summary Judgment. (*Id.*).

In response to Plaintiff's motions to compel and for sanctions, Defendants argued that they advised Plaintiff's counsel in advance of the depositions that they objected to the 30(b)(6) topics and planned to seek protective orders and that they needed to reschedule

Yahn and Bidney's depositions. (ECF No. 111 at 2). Defendants explained that they intended to produce Yahn and Bidney, who are both located in Portland, Oregon, as 30(b)(6) corporate representatives and fact witnesses. (*Id.* at 4). However, Yahn was quarantined from December 16 through 26, 2020. (*Id.* at 6 n.2). Defendants further related that the witnesses wanted counsel to prepare them for and defend the depositions in person given the highly aggressive posture that Plaintiff had taken throughout the case. (*Id.* at 6). Therefore, given the circumstances, Defendants asked to reschedule the fact witness depositions in January 2021 and intended to seek Court intervention to determine the scope of the 30(b)(6) topics. According to Defendants, they advised Plaintiff's counsel that they had no objection to a continuance of the February 1, 2021 discovery deadline to accommodate the depositions, and Plaintiff's counsel indicated that he might contact the Court regarding an extension. (*Id.* at 3). However, Defendants stated that Plaintiff instead filed the instant motions to compel and for sanctions without warning. (*Id.* at 2, 7). Defendants contended that an order compelling the depositions is unnecessary, as they are willing to produce witnesses for the 30(b)(6) and fact witness depositions. (*Id.* at 7). Further, they argued that sanctions are not warranted because they acted in good faith and Plaintiff was not prejudiced as the deposition deadline was February 1, 2021. (*Id.*). As noted, Defendants filed the motions for protective orders on December 30, 2020 and requested to reschedule the December 21, 2020 fact witness depositions for a date in January 2021, all of which fell within the discovery deadline.

Plaintiff's reply to Defendants' response emphasized that, although Defendants notified Plaintiff of their objections, they did not file motions for protective orders prior to the date of the 30(b)(6) depositions, which Plaintiff asserted is a mandatory procedure. (ECF No. 115 at 2). Furthermore, Plaintiff argued that Defendants unjustifiably canceled

the fact witness depositions given that there was no allegation that Yahn was sick from COVID-19 exposure and no contention whatsoever that Bidney was unavailable. (*Id.*). Plaintiff maintained that it was prejudiced by Defendants' non-appearance at the depositions as the dispositive motion deadline is February 20, 2021, and Plaintiff intended to have the depositions completed before January to allow sufficient time to serve follow-up requests for admission and interrogatories. (*Id.* at 4-5). Also, Plaintiff noted that Plaintiff's counsel is not available for most of January 2021 due to a previously-scheduled vacation. (*Id.* at 5 n.6).

On December 30, 2020, Defendants filed motions for protective orders concerning the 30(b)(6) depositions. (ECF Nos. 109, 110). Defendants stated that they are in no manner opposed to producing witnesses for the depositions, but Plaintiff refused to limit the scope of inquiry related to any of the topics. (*Id.* at 1). In their integrated memorandum in support, Defendants explained their objections to the topics and suggested ways in which to narrow the scope of the requests. (ECF Nos. 109, 110).

In an effort to resolve all of the outstanding discovery motions, the undersigned entered an Order on January 7, 2021, specifying a modified briefing schedule. (ECF No. 112). The Order required Plaintiff to respond to Defendants' motions for protective order concerning the 30(b)(6) depositions. (*Id.*). However, despite that Order, and despite the fact that Plaintiff moved to compel the 30(b)(6) depositions, Plaintiff did not substantively respond to Defendants' objections to the 30(b)(6) deposition topics. Instead, Plaintiff filed a Consolidated Motion to Strike and Response to Motions of Each Defendant for a Protective Order and for Additional Time to Respond. (ECF No. 113). Plaintiff asserted that there was "no need" to respond to the substance of Defendants' motions for protective orders because "there is now no pending Rule 30(b)(6)

deposition," and it would be unlikely for the parties to be able to reschedule the depositions before the discovery deadline. (*Id*. at 1). Plaintiff further stated that, under the Court's local rules, Defendants' failure to timely object to the amended 30(b)(6) notices constituted a waiver of their objections to the topics. (ECF No. 114 at 2). Plaintiff insisted that the only effective remedy to redress Defendants' "cavalier disregard" of the applicable rules is to impose substantial sanctions. (ECF No. 113 at 1-2). It noted that the Court recently sanctioned Defendants' same counsel in another case for "unabated" discovery abuses, which the Court described as "disturbing antics." (*Id*. at 3) (citing *Brickstreet Mut. Ins. Co. v. Chartis Cas. Co.*, Case No. 5:19-CV-00212 (S.D.W. Va. May 21, 2020), ECF No. 50 at 7). However, Plaintiff stated that, in the event that the Court is inclined to consider Defendants' motions for protective orders, Plaintiff requested "sufficient time to respond to those specific objections." (*Id*. at 2).

Defendants filed a reply in support of the motions for protective orders and in response to the arguments addressed in Plaintiff's foregoing motion. (ECF No. 116). They contended that they did not waive any right to protective orders regarding the 30(b)(6) depositions because they timely objected to the deposition notices on multiple occasions. (*Id*. at 1-2). Defendants recounted that they first objected to the scope of the topics by letter dated November 4, 2020, and they noted their objections again during the November 10, 2020 meet and confer telephone conference. (*Id*. at 1). Defendants explained that Plaintiff's counsel did not narrow the topics as he suggested that he might do, but instead served amended notices with the same topics, which prompted an email from Defendants on December 9, 2020, stating that they would not produce witnesses on December 16, 2020 and would seek protective orders. (*Id*. at 1-2). Based on the above, Defendants argued that it is disingenuous for Plaintiff to suggest that it ever planned for

the depositions to go forward. (*Id.* at 4). Furthermore, Defendants asserted that Fed. R. Civ. P. 26(c) does not contain any explicit time frame for filing a motion for protective order. (*Id.* at 3). Rather, they pointed out that the rule requires the moving party to certify that it conferred in good faith with the opposing party to attempt to resolve the dispute without court intervention. (*Id.*). Defendants explained that is precisely what they tried to accomplish by reaching out to Plaintiff's counsel concerning their objections. (*Id.*).

Defendants' response to Plaintiff's Consolidated Motion to Strike incorporated by reference their reply in support of their motions for protective orders. (ECF No. 117). They did not include any additional argument regarding their motions for protective orders, but requested that Plaintiff pay their reasonable attorney fees regarding the motion to strike. (*Id.*). Plaintiff filed a reply to this response in which Plaintiff reiterated that Defendants failed to comply with the Federal Rules of Civil Procedure regarding the 30(b)(6) depositions. (ECF No. 118). Plaintiff insisted that Defendants willfully disregarded the rules and resorted to self-help. (*Id.*). Therefore, Plaintiff argued that the only adequate remedy is to strike Defendants' Answers, and "any other remedy would reward Defendants for their mendacity." (*Id.* at 5).

## II.   Discussion

### A.  Motions to Compel and for Sanctions

Plaintiff seeks an order compelling the 30(b)(6) and fact witness depositions, as well as for sanctions against Defendants for failing to produce witnesses on the scheduled dates. (ECF Nos. 104, 106). Defendants do not oppose producing the witnesses for deposition, and they argue that an order compelling the depositions is unnecessary for that reason. However, the parties vehemently disagree whether sanctions are warranted for Defendants' non-appearance at the depositions.

Regarding the 30(b)(6) depositions, a Court may levy sanctions if "a party or a party's officer, director, or managing agent—or a person designated under Rule 30(b)(6) or 31(a)(4)—fails, after being served with proper notice, to appear for that person's deposition." Fed. R. Civ. P. 37(d)(1)(A)(i). A party's failure to appear is excused "if the party failing to act has a pending motion for a protective order under Rule 26(c)." Fed. R. Civ. P. 37(d)(2); *Robinson v. Quicken Loans, Inc.*, No. 3:12-cv-00981, 2013 WL 1776100, at *3 (S.D.W. Va. Apr. 25, 2013)) ("The proper procedure to object to a Rule 30(b)(6) deposition notice is ... to move for a protective order.").

As Plaintiff emphasizes, although Defendants notified Plaintiff of their objections to the topics, they did not have pending motions for protective orders on the date of the 30(b)(6) depositions. Therefore, their non-appearance was not excused under Rule 37, and the issue is whether sanctions are warranted in this circumstance. This Court has previously explained that "Rule 37(d) sanctions are mandatory for a 'failure to appear by means of wholly failing to educate a Rule 30(b)(6) witness, unless the conduct was substantially justified.'" *Robinson v. Quicken Loans, Inc.*, No. 3:12-CV-00981, 2013 WL 1776100, at *3 (S.D.W. Va. Apr. 25, 2013) (quoting *Int'l Ass'n of Machinists and Aerospace Workers v. Werner–Masuda,* 390 F.Supp.2d 479, 489 (D. Md. 2005)). The same logic, of course, applies to a party's failure to produce a witness at all. Rule 37(d) provides for various sanctions, including dismissal, if a party fails to appear for its deposition after being served with proper notice. Fed. R. Civ. P. 37(d)(3). However, "[b]ecause dismissal is a harsh sanction, before ordering dismissal under [Rule 37(d)], a court must apply a four-factor test, considering '(1) whether the non-complying party acted in bad faith, (2) the amount of prejudice that noncompliance caused the adversary, (3) the need for deterrence of the particular sort of non-compliance, and (4) whether less

drastic sanctions would have been effective.'" *United States v. Gaither*, No. CV519CR00012KDBDSC, 2020 WL 2041343, at *2 (W.D.N.C. Apr. 28, 2020) (quoting *Belk v. Charlotte Mecklenburg Bd. of Educ.*, 269 F.3d 305, 348 (4th Cir. 2001)).

For the reasons stated below, the Court finds that Defendants' failure to produce witnesses for the 30(b)(6) depositions was substantially justified. Notably, Defendants advised Plaintiff well in advance of the depositions that they objected to the overbroad scope of the 30(b)(6) topics. Defendants attempted to resolve the issue with Plaintiff, but Plaintiff declined to narrow the topics in any manner. Although Defendants undoubtedly should have filed the motions for protective order before the date of the depositions, they clearly communicated their objections to Plaintiff well in advance of the depositions and made clear that they would not proceed with the depositions without resolving the dispute. Defendants did not ignore the notices, but instead very clearly tried to confer in good faith with Plaintiff to resolve the issues. Defendants express that they had difficulty trying to resolve the objections with Plaintiff. Indeed, even at this juncture, Plaintiff failed to substantively respond to the motions for protective orders when ordered by the Court. Moreover, the context of Defendants' actions is important in this instance. The depositions were scheduled to occur in mid-December during a surging COVID-19 pandemic. Although Defendants did not formally file their motions for protective orders until two weeks after the scheduled deposition date, the delay must be considered in light of all of the above facts.

Compliance with Rule 37 is of critical importance. Nonetheless, each discovery dispute must be analyzed on a case-by-case basis. When considering the particular circumstances in this case, the undersigned concludes that Defendants did not engage in sanctionable conduct. Plaintiff attempts to analogize this case to *Robinson* and

9

*Brickstreet*. However, those decisions were predicated upon very different facts. In *Robinson*, the defendant was served with a 30(b)(6) deposition notice that contained only seven topics to be addressed by a corporate representative. *Robinson*, 2013 WL 1776100, at *4. The defendant in *Robinson* essentially ignored the notice, and, only days before the deposition was to take place, filed written objections to the topics and refused to produce a witness on some topics, while deciding to reconfigure the remaining topics to accommodate the witness that it had designated. *Id*. By contrast, Defendants in the instant matter did not ignore the 30(b)(6) notice and did not wait until a few days before the depositions to object. Rather, Defendants were served with notices listing over 30 topics, most of which were patently overbroad. Defendants attempted to resolve the 30(b)(6) discovery dispute with Plaintiff consistently and well in advance of the depositions, and otherwise simply asked to move two fact witness depositions scheduled in late December to the following month. The facts present in this case in no way reflect on the issues presented in *Robinson*.

In *Brickstreet*, another case relied upon by Plaintiff, the defendants did not fully and meaningfully respond to discovery requests for more than six months after service. They only submitted an agreed protective order after the Court compelled discovery, and the Court found that the straightforward discovery matter should not have required Court intervention. *Brickstreet*, Case No. 5:19-CV-00212 (S.D.W. Va. May 21, 2020), ECF No. 50 at 7-9. In contrast, Court intervention in the instant action was reasonable. Defendants certainly had grounds to move for protective orders concerning Plaintiff's extensive and disproportional deposition topics. Moreover, given that the Court had not ruled on any of the instant discovery disputes, there was no order that Defendants ignored or with which they failed to timely comply. In sum, the facts of this case are not comparable to either of

the cases cited by Plaintiff.

Furthermore, Plaintiff suggests that it has suffered great prejudice from Defendants' actions, but the Court finds that argument to be unavailing. If Defendants had filed their motions for protective orders two weeks earlier, before the 30(b)(6) depositions were scheduled to take place, Plaintiff would be in the same position it is in now. The Court would be evaluating the scope of the topics and issuing an order on the motions for protective orders. Moreover, when Defendants asked to reschedule the depositions and moved for protective orders, a month or more remained before the deposition deadline. Plaintiff refused to reschedule the fact witness depositions in January 2021 and did not substantively respond to the motions for protective orders, which prevented the 30(b)(6) depositions from moving forward. Therefore, for all of the above reasons, the Court declines to impose sanctions regarding Defendants' non-appearance at the 30(b)(6) depositions.

Next, concerning the individual depositions of Yahn and Bidney, the Court likewise finds that Defendants' actions were substantially justified. Defendants merely asked to reschedule the December 21, 2020 depositions for a date the following month. The witnesses were located across the country, and one of them was quarantined due to a COVID-19 exposure. While it was certainly feasible for counsel to prepare the witnesses via Zoom, it was not an unreasonable request to seek a slight delay of the depositions in order for counsel to prepare the witnesses and attend the depositions in person. As noted, given the distance of travel and the contentiousness of this case, Defendants' request for counsel to make one trip to prepare and defend the depositions in person was understandable. Rescheduling depositions is generally a matter of common professional courtesy. While Plaintiff found it to be inconvenient, Plaintiff does not adduce any facts

to warrant the imposition of sanctions against Defendants. As noted, Defendants are willing to produce the witnesses for deposition, asked to reschedule the depositions within the discovery period, and are willing to seek a discovery extension.

For the reasons stated above, the Court **GRANTS, in part,** Plaintiff's motions to compel and for sanctions to the extent that they seek an order compelling the 30(b)(6) depositions and fact witness depositions of Yahn and Bidney. (**ECF Nos. 104, 106**). The Court **DENIES** Plaintiff's request for sanctions and all other relief. (*Id.*).

### B. Defendants' Motions for Protective Orders and Plaintiff's Consolidated Motion to Strike the Motions of Each Defendant for a Protective Order and for Additional Time to Respond

Turning to the remaining motions, a Court may issue a protective order pursuant to Rule 26(c)(1) to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense. Fed. R. Civ. P. 26(c)(1). In doing so, the Court can limit the scope of disclosure or discovery to certain matters. *Id.* In this case, Defendants move for protective orders limiting the scope of inquiry in the 30(b)(6) depositions. Plaintiff argues that Defendants' motions for protective orders are moot because the date of the depositions identified in the notices has passed and it is not feasible to schedule the depositions within the discovery deadline. However, as noted above, the Court compels Defendants to produce witnesses for the depositions. Therefore, it would disserve the parties not to resolve the dispute over the deposition topics so that the parties can proceed with the depositions in the event they seek a discovery extension. Ignoring the substantive issues would only waste additional time and fail to move this case forward. Therefore, in the interest of judicial economy, common sense, and practicality, the Court considers Defendants' motions for protective orders. Plaintiff's request to strike Defendants' motions for protective orders or, alternatively, for additional time to brief the issue is

denied. Plaintiff was ordered to respond to the motions for protective orders, but it instead advised the Court that it was unnecessary to respond and the issue was moot. Plaintiff shows no basis for an extension of time to respond. It has been aware of Defendants' objections for months, yet even when the Court advised the parties that it intended to resolve the motions for protective orders, Plaintiff declined to address the core issues. Plaintiff had ample time to respond, but it declined to do so. Therefore, the Court **DENIES** Plaintiff's Consolidated Motion to Strike the Motions of Each Defendant for a Protective Order and for Additional Time to Respond. (**ECF No. 113**). However, the Court declines to award attorney's fees to Defendants, which are requested in Defendants' response to Plaintiff's motion. (ECF No. 117).

The Court further **GRANTS, in part,** and **DENIES, in part,** Defendants' motions for protective orders, (**ECF Nos. 109, 110**),[1] as specified below:

> **Topic 2:** All facts, witnesses, and documents regarding the training provided by Lexington Insurance Company to AIG Claims in the last ten (10) years to handle claims asserted under Lexington insurance policies.

Defendants assert that this topic is overbroad, but they agree to produce witnesses to discuss the training provided to AIG Claims adjusters handling "these types of claims" for the last five years. (ECF Nos. 109 at 3, 110 at 3-4). The Court finds that the scope of this topic is overly broad as it is not reasonably limited in subject matter or time period. The insurance policy at issue in this case was a commercial general liability policy with additional coverage related to trick, device, or false pretense. (ECF No. 1 at 3). Plaintiff contends that a person used a stolen identity to fraudulently purchase a vehicle in August

---

[1] Plaintiff served separate 30(b)(6) deposition notices on each Defendant. Some of the topics were identical, and some varied slightly, generally only with respect to the number assigned to the topic. The topics addressed below apply to both Defendants unless otherwise noted. In addition, similar topics are grouped together, regardless of chronological order.

2018. (*Id.*). Plaintiff submitted an insurance claim for its losses, which was purportedly denied because Plaintiff did not provide notice of the claim within 90 days of delivery of the vehicle. (*Id.* at 5). The scope of this 30(b)(6) topic extends seven or more years preceding the insurance claim at issue, and it encompasses any type of Lexington insurance policy. It would impose undue burden and expense on Defendants to prepare a witness on such a broad range of matters. Therefore, the Court **ORDERS** that the scope of this topic is limited to the following: All facts, witnesses, and documents regarding the training provided by Lexington Insurance Company to AIG Claims in the last five (5) years concerning trick, device, and false pretense claims asserted under Lexington's commercial general liability insurance policies.

> **Topic 3:** All facts, witnesses, and documents regarding any reviews, audits, or examinations conducted by Lexington Insurance Company concerning its compliance with West Virginia state laws regarding insurance claims, West Virginia Insurance Regulations, claims handling statutes, and/or policies and procedures for the last ten (10) years.

The Court finds that Topic 3 is overly broad for the same reasons as Topic 2. Therefore, the Court **ORDERS** that the scope of this topic is limited to the following: All facts, witnesses, and documents regarding any reviews, audits, or examinations conducted by or for Lexington Insurance Company in the past five (5) years concerning its compliance with its policies and procedures and/or West Virginia state laws or regulations concerning the trick, device, and false pretense coverage extension of Lexington's commercial general liability insurance policies.

> **Topic 4:** All facts, witnesses, and documents regarding any and all audits conducted by or for the benefit of Lexington Insurance Company to determine compliance with State and Federal laws regarding claims handling for the last ten (10) years.

The Court finds that Topic 4 is overbroad and duplicative of Topic 3. Therefore, the Court **ORDERS** that Defendants are not required to produce a witness to respond to this topic of inquiry.

The following several topics are discussed collectively:

**Topic 5:** All facts, witnesses, and documents regarding any extra contractual bad faith suits against Lexington Insurance Company for the last ten (10) years.

**Topic 6:** All facts, witnesses, and documents regarding any and all findings by any judicial, administrative, executive tribunal that Lexington Insurance Company and/or its agents violated any insurance policy by improperly denying benefits for the last ten (10) years.

**Topic 7:** All facts, witnesses, and documents regarding any finding by judicial tribunal that Lexington Insurance Company violated the Unfair Claims Settlement Practice Act or the implied covenant of good faith or acted in bad faith or was otherwise liable for extra contractual damages for the last ten (10) years.

**Topic 8:** All facts, witnesses, and documents regarding any finding by any administrative body that Lexington Insurance Company violated the Unfair Claims Settlement Practice Act or the implied covenant of good faith or acted in bad faith or was otherwise liable for extra contractual damages for the last ten (10) years.

**Topic 28:** All facts, witnesses, and documents regarding any state administrative complaints regarding Trick Device and False Pretense claims.

**Topic 31:** All facts, witnesses, and documents regarding any West Virginia first party claims in which the defendant, Lexington Insurance Company paid extracontractual damages.

Defendants object that these topics are overbroad, and they note that they produced to Plaintiff information related to any complaints filed against Defendants in West Virginia related to bad faith or claims processing, handling, investigation, and/or payment within the last five years; they further explain that there have been no administrative complaints related to trick, device, and false pretense claims in West

Virginia. (ECF Nos. 109 at 5, 12-14; 110 at 5, 13, 14). The Court finds that the topics are overly broad in scope, and Plaintiff has offered no explanation for requiring any information beyond the documents that Defendants provided. Therefore, the Court **ORDERS** that Defendants are not required to produce a witness to respond to these topics of inquiry.

> **Topic 9:** All facts, witnesses, and documents regarding any market conduct studies performed on Lexington Insurance Company for the last five (5) years.

> **Topic 27:** All facts, witnesses, and documents regarding any market conduct study which included in any way Trick Device and False Pretense coverage.

Defendants object to these requests on the basis that Plaintiff does not define the ambiguous terminology "market conduct study/studies," and Plaintiff further asserts that the requests are overly broad in geographic scope, irrelevant, and disproportionate to the needs of the case. (ECF Nos. 109 at 6, 12, 110 at 6, 12). "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Given that standard, the Court finds that this topic is ambiguous with no clear relevance to Plaintiff's claims. Furthermore, it is unrestricted in geographical scope and not reasonably limited to the subject matter at issue in this litigation. Therefore, Defendants are not required to produce a witness to respond to these topics of inquiry.

> **Topic 13:** All facts, witnesses, and documents regarding the Complaint Register or Log maintained by Lexington Insurance Company in connection

with its operations in the State of West Virginia, as required by W. Va. Code §33-11-4(10).

The state statute cited by Plaintiff in Topic 13 states:

> No insurer shall fail to maintain a complete record of all the complaints which it has received since the date of its last examination under section nine, article two of this chapter. This record shall indicate the total number of complaints, their classification by line of insurance, the nature of each complaint, the disposition of these complaints, and the time it took to process each complaint. For purposes of this subsection, "complaint" shall mean any written communication primarily expressing a grievance.

W. Va. Code §33-11-4(10).

Defendants contend that they produced such information for the five-year period preceding Plaintiff's insurance claim. (ECF Nos. 109 at 6, 110 at 6). It is unclear what further information Plaintiff requires from a 30(b)(6) witness. In addition, this topic is unlimited in temporal scope, which would make it exceedingly difficult, if not impossible, for Defendants to prepare a 30(b)(6) witness to fully respond to the topic as drafted. Therefore, the Court **ORDERS** that Defendants are not required to produce a witness to respond to this topic of inquiry.

> **Topic 14:** All facts, witnesses, and documents regarding Lexington Insurance Company's policies and procedures regarding or relating to the handling of the complaints about the manner in which the claims were handled.

Plaintiff does not specify what "complaints" and "claims" this topic encompasses. To the extent that it seeks testimony concerning the complaints identified in the Complaint Register or Log referenced in Topic 13, the scope of inquiry is overly broad. The Court **ORDERS** that the scope of this topic is limited to the following: All facts, witnesses, and documents regarding Lexington Insurance Company's policies and procedures relating to the handling of complaints regarding denial of coverage under the

trick, device, and false pretense extension of Lexington's commercial general liability insurance policies.

> **Topic 15:** All facts, witnesses, and documents regarding the gross income and net worth of Lexington Insurance Company for the fiscal years, 2018, 2019 and 2020.

Defendants assert that this topic is premature because it relates to punitive damages. In addition, they contend that they produced Lexington Insurance Company's financial statements, which provide the necessary information. (ECF Nos. 109 at 7, 110 at 7). Given the fact that Plaintiff offers no dispute that the financial information has been produced and provides no reason that it requires further corporate testimony on this topic, the Court **ORDERS** that Defendants are not required to produce a witness to respond to this topic of inquiry.

> **Topic 16:** All facts, witnesses, and documents regarding Lexington Insurance Company's past interpretation SECTION II A. TRICK, DEVICE AND FALSE COVERAGE of the Plaintiff's policy. (If not produced above.)

Defendants argue that this topic is not reasonably limited in time or scope, but they agree to produce a witness to discuss this category for the past five years. The Court finds that the phrase "past interpretation" contains no temporal limitation, and it is thus overly broad, unduly burdensome, and disproportionate to the needs of the case. The facts giving rise to Plaintiff's insurance claim occurred in August 2018. Thus, a restriction to the past five years is an appropriate limitation. The Court **ORDERS** that the scope of inquiry is limited to the past five years.

> **Topic 17:** All facts, witnesses, and documents regarding the legal/business relationship between Lexington Insurance Company and AIG Claims, Inc.

Defendants contend that this topic is irrelevant and disproportionate to the needs of the case, as there is no dispute that AIG Claims, Inc., was the third-party administrator

of Plaintiff's insurance claim. (ECF Nos. 109 at 7-8, 110 at 8). They further argue that the relationship between the entities is irrelevant to Plaintiff's claims in this action, and Defendants already produced the Claims Services Agreement that governs their relationship. (ECF Nos. 109 at 8, 110 at 8). The Court disagrees with Defendants, finding that this topic is relevant to Plaintiff's bad faith claims, and Plaintiff is entitled to some degree of inquiry into the relationship, and associated roles and responsibilities, of the defendants in handling Plaintiff's insurance claim. However, the Court finds that this topic is overly broad in scope. The Court **ORDERS** that this topic is limited to the following: All facts, witnesses, and documents regarding the legal/business relationship between Lexington Insurance Company and AIG Claims, Inc., concerning commercial liability insurance claims for the past five years.

> **Topic 18:** All facts, witnesses, and documents regarding settlements of extra contractual claims by Lexington Insurance Company and/or AIG Claims, Inc on behalf of a Lexington claim it adjusted.

Defendants argue that this request is not reasonably limited in time or geographic scope, irrelevant to the claims in this action, and not proportional to the needs of the case. (ECF Nos. 109 at 8, 110 at 8). They also object that it seeks confidential information subject to attorney-client privilege and the work product doctrine. (ECF Nos. 109 at 8, 110 at 9). The relevance of this topic is unapparent. While the list of bad faith complaints that Plaintiff sought in discovery could lead to information to establish a pattern and practice of unfair trade practices, the specific settlement terms and figures offer no information regarding the actions that occurred, nor do they contain any admission of fault by Defendants. In addition, this request is not limited to a reasonable time period or similar insurance claims. Therefore, the Court **ORDERS** that Defendants are not required to produce a witness to respond to this topic of inquiry.

**Topic 20:** All facts, witnesses, and documents regarding any and all agreements between Lexington Insurance Company and AIG Claims, Inc. relating to the third-party administration of Lexington Insurance Company's insurance claims in effect for the last five years.

The Court finds that this topic is overly broad in subject matter and duplicative of Topic 17. As limited by the Court, a Topic 17 inquiry into the legal/business relationship between Lexington Insurance Company and AIG Claims, Inc., necessarily includes any agreements between the entities regarding the third-party administration of commercial liability claims for the past five years. The Court **ORDERS** that Defendants are not required to produce a witness to respond to this repetitive this topic of inquiry.

**Topic 21:** All facts, witnesses, and documents regarding Lexington Insurance Company's reviews/audits of the operations of AIG Claim, Inc.'s handling of insurance claims under Lexington Insurance Company insurance policies for the last five years.

Defendants object that this request is irrelevant and disproportionate to the needs of the case. (ECF Nos. 109 at 9, 110 at 9). They further contend that, upon information and belief, no reviews/audits were conducted. (ECF Nos. 109 at 9, 110 at 10). Therefore, they assert that they could not produce a witness on this topic. (*Id*.). The Court finds that this topic is relevant, but overly broad insofar as it encompasses any type of insurance claim. Furthermore, if there is indeed no responsive information, it should be straightforward for Defendants' 30(b)(6) witness to confirm such fact. The Court **ORDERS** that the scope of this topic is limited to the following: All facts, witnesses, and documents regarding Lexington Insurance Company's reviews/audits of the operations of AIG Claim, Inc.'s handling of commercial liability insurance claims under Lexington Insurance Company policies for the last five years.

**AIG's Topic 22:** All facts, witnesses, and documents regarding any training and or education supplied by AIG Claims, Inc. to its employees regarding Unfair Claim Settlement Practices.

This topic was addressed only to AIG, which objects on the basis that the request is unlimited in time and geographic scope. (ECF No. 109 at 9). In addition, AIG contends that it conducted a good faith search and did not find any responsive written materials. (*Id.* at 9-10). The Court finds that the scope of this topic is overly broad and **ORDERS** that the topic is limited to the following: All facts, witnesses, and documents regarding any training and or education supplied by AIG Claims, Inc., to its employees in the past five years regarding Unfair Claim Settlement Practices in handling commercial liability policies issued in West Virginia.

> **Lexington's Topic 22:** All facts, witnesses and documents regarding Lexington Company's selection and or drafting of the following policy language:
>
> Trick, Device and False Pretense
>
> We will pay for loss which you incur as a result of any person causing you to voluntarily acquire an automobile or part with evidence of title to or possession of a Covered Automobile as a result of a fraudulent trick or scheme or under false pretense. Such acquisition or parting of title or automobile must have been induced by a criminal scheme, criminal trick, criminal device or criminal false pretense and must be reported to us within 90 days of the date of such acquisition or parting.

This topic was addressed only to Lexington Insurance Company. The Court finds that it is overly broad and not relevant and proportional to the needs of the case. While it is clearly relevant to Plaintiff's claims how Defendants interpreted and applied the policy language to Plaintiff's insurance claim, information concerning the selection and drafting of the policy language does not have the same bearing. The Court **ORDERS** that Defendant is not required to produce a witness regarding this topic.

The Court addresses the following several topics jointly:

> **AIG's Topic 23:** All facts, witnesses, and documents regarding AIG Claims, Inc. internal training, directive and/or best practices regarding

interpretation of the coverage specifically set out in the [sic] Lexington policy which is set for below:

A.  Trick, Device and False Pretense

We will pay for loss which you incur as a result of any person causing you to voluntarily acquire an automobile or part with evidence of title to or possession of a Covered Automobile as a result of a fraudulent trick or scheme or under false pretense. Such acquisition or parting of title or automobile must have been induced by a criminal scheme, criminal trick, criminal device or criminal false pretense and must be reported to us within 90 days of the date of such acquisition or parting.

**Lexington's Topic 23:** All facts, witnesses, and documents regarding Lexington Insurance Company's internal training, directive and/or best practices regarding interpretation of the coverage specifically set out in paragraph 22.

**AIG's Topic 24:** All facts, witnesses, and documents regarding any litigation involving AIG Claims, Inc. and or its agents regarding the policy language set out in paragraph 23.

**Lexington's Topic 24:** All facts, witnesses, and documents regarding any litigation involving Lexington Insurance Company and or its agents regarding the policy language set out in paragraph 22.

**AIG's Topic 25:** All facts, witnesses, and documents regarding other claims denied by AIG Claims, Inc. on the basis of the 90 day reporting requirement in Plaintiff's policy and set out in paragraph 23.

**Lexington's Topic 25:** All facts, witnesses, and documents regarding other claims denied by Lexington Insurance Company on the basis of the 90 day reporting requirement in Plaintiff's policy and set out in paragraph 22.

**AIG's Topic 26:** All facts, witnesses, and documents regarding any search of external materials regarding the policy language set out in paragraph 23 conducted by AIG Claims, Inc.

**Lexington's Topic 26:** All facts, witnesses, and documents regarding any search of external materials regarding the policy language set out in paragraph 22 conducted by Lexington Insurance Company.

The parties argue that the foregoing topics are ambiguous, as well as irrelevant and disproportionate to the needs of the case because the alleged value of Plaintiff's insurance

claim has been paid to Plaintiff. (ECF Nos. 109 at 10-12, 110 at 10-12).[2] In addition, they object that these topics are not limited in time period or geographic scope. (*Id.*). Nevertheless, Defendants agree to produce a witness to discuss all of these categories for the past five years in West Virginia. (*Id.*). The Court finds that the topics are overly broad in scope and **ORDERS** that the topics are limited to the past five years in the jurisdiction of West Virginia.

> **Topic 29:** All facts, witnesses, and documents regarding internal audits that include Trick Device and False Pretense claims.

Defendants object to this request, but they are amenable to producing a witness to discuss this category for the past five years. (ECF Nos. 109 at 12-13,110 at 13). The Court finds that the topic is overly broad, as it is not limited in geographical scope or time period. The Court **ORDERS** that this topic is limited to West Virginia claims within the past five years.

> **Topic 30:** All facts, witnesses, and documents regarding the loss ratio regarding Trick Device and False Pretense coverage.

Defendants argue that this topic is not reasonably limited in time or geographic scope, irrelevant to Plaintiff's claims, and disproportionate to the needs of the case, as Plaintiff has been paid the alleged value of its underlying claim. (ECF Nos. 109 at 13, 110 at 13-14). However, the Court finds that this request is relevant, if properly limited in time period and geographic scope. The Court **ORDERS** that this topic is limited to the past five years in the jurisdiction of West Virginia.

> **Topic 32:** All facts, witnesses, and documents regarding any State or Federal court Orders, within the state of West Virginia, granting summary judgment to the claimant and a first party claim and or any bench or jury

---

[2] Despite the obvious mix-up in its brief, Lexington's response to Topic 22 clearly applies to Topic 23, as it quotes the language from the request, "internal training, directive and/or best practices." (ECF No. 110 at 10). Therefore, the Court construes Lexington's response to Topic 22 as its response to Topic 23.

verdict on a first party coverage or extracontractual issue against AIG Claims, Inc., [or Lexington Insurance Company].

Defendants object to this topic, but they agree to produce a witness to discuss the category for the last five years. (ECF Nos. 109 at 14, 110 at 15). The Court finds that this category is overly broad, as it contains no temporal limitation. The Court **ORDERS** that this topic is limited to the past five years.

It is so **ORDERED**.  The Clerk is instructed to provide a copy of this order to all counsel of record.

**ENTERED**:  February 1, 2021

Cheryl A. Eifert
United States Magistrate Judge