IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

MOSES ENTERPRISES, LLC,

        Plaintiff,

v.                                                             CIVIL ACTION NO. 3:19-0477

LEXINGTON INSURANCE COMPANY and
AIG CLAIMS, INC.,
aka AIG COMMERCIAL PROPERTY CLAIMS,

        Defendants.

**ORDER**

Pending before the Court is Defendants' Motion for Summary Judgment. ECF No. 94. The Motion specifically asks the Court to grant summary judgment regarding Plaintiff's claims for compensatory damages. Mot. 1. For the reasons that follow, the Motion is **DENIED**.

**I. BACKGROUND**

This action arises from an insurance coverage dispute. In August 2018, Plaintiff Moses Enterprises sold a 2017 Toyota Highlander to an individual using a stolen identity. Compl. ¶ 10, ECF No. 1. Plaintiff was not aware that the identity had been stolen until late November 2018. *Id.* at ¶ 11. Upon learning the vehicle had been fraudulently purchased, Plaintiff immediately advised its insurer, Defendant Lexington Insurance Company ("Defendant Lexington"). *Id.* at ¶ 12. The claim was managed by Defendant AIG Claims. *Id.* at ¶ 13. On December 31, 2018, Defendant AIG Claims denied the claim on the basis that the Plaintiff had not provided notice of the claim within 90 days of delivery of the vehicle, as required by the policy. *Id.* at ¶ 19.

On June 25, 2019, Plaintiff filed the instant lawsuit against the Defendants asserting four claims: (1) breach of first party insurance contract; (2) violation of the West Virginia Unfair Trade Practices Act; (3) common law bad faith; and (4) reasonable expectation of coverage. *Id.* at ¶¶ 25–50. Plaintiff's Complaint seeks damages and attorney's fees and costs. *Id.*

On May 26, 2020, this Court granted Plaintiff's Motion for Partial Summary Judgment and found that the Defendants unlawfully denied coverage for the losses Plaintiff incurred as a result of the fraudulent vehicle purchase. ECF No. 39, at 5. A few weeks before the Court entered its Partial Summary Judgment Order, Defendant Lexington sent Plaintiff a check for $44,640.91, which was Defendant "Lexington's calculation of the value of the underlying claim." Defs.' Mem. 2, ECF No. 95; Exhibit A, ECF No. 94-1. The check was received by Plaintiff on May 2, 2020. Exhibit A. Thus, in Defendants' view, Plaintiff's contractual damages have been paid and any claims for attorney's fees and costs should be "cut off" as of May 2, 2020, the date Plaintiff received the check. Defs.' Mem. 6–7.

## II.  LEGAL STANDARD

To obtain summary judgment, the moving party must show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In considering a motion for summary judgment, the Court will not "weigh the evidence and determine the truth of the matter." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Instead, the Court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986).

The nonmoving party nonetheless must offer some "concrete evidence from which a reasonable juror could return a verdict in his [or her] favor." *Anderson*, 477 U.S. at 256. Summary

judgment is appropriate when the nonmoving party has the burden of proof on an essential element of his or her case and does not make, after adequate time for discovery, a showing sufficient to establish that element. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The nonmoving party must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in support of his or her position. *Anderson*, 477 U.S. at 252.

### III. DISCUSSION

**A. Plaintiff's Contractual Damages Have Not Been Paid**

> i. *Plaintiff's interrogatory response indicates that its claimed damages are not limited to vehicle and bank fees.*

West Virginia law recognizes two categories of breach of contract damages: (1) damages "directly flowing from the contract breach" and (2) "indirect or consequential damages that rise from the special circumstances of the contract." *Desco Corp. v. Harry W. Trushel Const. Co.*, 413 S.E.2d 85, 89 (W. Va. 1991) (citing Syl. pt. 2, *Ky. Fried Chicken of Morgantown, Inc. v. Sellaro*, 214 S.E.2d 823 (W. Va. 1975)).

Defendants submit that Plaintiff "represented that the cost of the vehicle and bank fees pertaining to the allegedly fraudulent sale were $41,223.91." Defs.' Mem. 4. Moreover, when asked to detail its damages during the discovery process, Defendants argue that "Plaintiff did not identify any indirect or consequential damages that it claims were owed." *Id.* at 5 (citing Exhibit B, ECF No. 94-2). Consequently, Defendants believe that Plaintiff's contractual damages are limited to the vehicle and bank fees, plus interest. *Id.* at 6.

Defendants' interpretation of the Plaintiff's discovery response is perplexing. In response to "Interrogatory No. 3," which asked Plaintiff to itemize all losses suffered or incurred, Plaintiff stated the following:

> The primary loss sustained by Moses was the sales price of the vehicle including all costs incurred as a consequence thereof. Additionally, it incurred and will continue to incur costs and expenses in connection with this litigation. These expenses are continuing and cannot be fully documented at this time. This information will be provided in connection with any proceedings related to the determination of that amount. Moses also has incurred damages and expenses related to the time required by its officers and employees to participate in this litigation which would not have been necessary had the Defendants complied with West Virginia law.
>
> Plaintiffs may be entitled to punitive damages because the conduct of the Defendants was a knowing and intentional violation of the laws of this state which it knew would result in damages to Moses.

Exhibit B, ECF No. 94-2.

While the Court does not venture to categorize the "damages and expenses related to the time required by its officers and employees to participate in this litigation" as either direct or indirect damages, the Defendants' own evidence suggests that Plaintiff is seeking more than just the vehicle and bank fees. As such, a material question of fact remains as to what damages the Plaintiff is entitled to as a result of Defendants' breach of contract.

> ii. *Even if Plaintiff's contractual damages were limited to vehicle and bank fees, the claim has not been paid or settled.*

Defendants argue that because they have "paid the contractual damages," the breach of contract claim has "been mooted." Defs.' Mem. 6. Although it is agreed that Defendants mailed a check to the Plaintiff, Plaintiff's reception of the check is contested. Defendants assert that "[a]t no time since the check was issued has Plaintiff indicated that the amount set forth in the check did not constitute full payment for the claim." *Id.* at 2. This is a curious contention when it is uncontroverted that the Defendants' check was returned via certified mail. *See* Exhibit 1, ECF No.

96-1.[1] Even more, Plaintiff says that Defense Counsel was told *before* the check was sent that Plaintiff would not settle for the amount proposed by the Defendants. Mem. of Pl. 2–3; Exhibit 1.[2]

The West Virginia Supreme Court of Appeals has routinely held that settlements must be supported by a meeting of the minds. *Messer v. Huntington Anesthesia Grp., Inc.*, 664 S.E.2d 751, 759 (W. Va. 2008) (citing *Triad Energy Corp. of W. Va. v. Renner*, 600 S.E.2d 285, 288 (W. Va. 2004)).[3] Settlement of a claim cannot be grounded in the unilateral acts of one party without the assent of the other. It borders on absurd to argue that mailing opposing counsel an unwanted check is sufficient to settle or moot a claim. The record before the Court shows no evidence that the Plaintiff has accepted any payment for the insurance claim or that the claim has somehow been paid, settled, mooted, or otherwise satisfied.

### B. Plaintiff's *Hayseeds* and UTPA Damages Have Not Been Limited by Defendants' Unilateral Settlement Attempt

West Virginia recognizes common law causes of action against insurers who deny claims in bad faith. *See Hayseeds, Inc. v. State Farm Fire & Cas.*, 352 S.E.2d 73 (W. Va. 1986). Plaintiffs that prevail in these actions may be entitled to attorney's fees and costs. *Id.* at 74. Specifically, "[w]henever a policyholder substantially prevails in a property damages suit against its insurer, the insurer is liable for: (1) the insured's reasonable attorneys' fees in vindicating its claim; (2) the insured's damages for net economic loss cause by the delay in settlement[;] and [(3)] damages for aggravation and inconvenience." *Id.*; *Jordan v. Nat'l Grange Mut. Ins. Co.*, 393 S.E.2d 647, 649 (W. Va. 1990). Regarding the recovery of attorney's fees, the insured must show that "the

---

[1] While Defendants oddly declined to admit that the check was returned, they have presented no evidence to rebut Plaintiff's exhibit showing it was returned.
[2] The letter from Plaintiff's Counsel indicates that at the time the check was sent, Plaintiff was willing to settle for $120,000.00. Exhibit 1.
[3] "The contractual concept of 'meeting of the minds' or 'mutual assent' relates to the parties having the same understanding of the terms of the agreement reached." *Messer*, 664 S.E.2d at 759 (citing 17 C.J.S. *Contracts* § 35 (1999)).

attorney's services were necessary to obtain payment of the insurance proceeds." *Jordan*, 393 S.E.2d at 652.

In addition to *Hayseeds* bad faith claims, insured individuals may be able to pursue claims against insurers under West Virginia's Unfair Trade Practices Act ("UTPA"), W. Va. Code § 33-11-1 *et seq.*, if they can show that the insurer engaged in a "general business practice" of unfair claim settlement. *State ex rel. Allstate Ins. Co. v. Gaughan*, 640 S.E.2d 176, 181 n.6 (W. Va. 2006). Defendants submit that "damages under an UTPA action are similar to those recoverable in an action under *Hayseeds*." Defs.' Mem. 6 (citing *McCormick v. Allstate Ins. Co.*, 505 S.E.2d 454, 464 fn. 9 (1998) (Starcher, J., concurring in part and dissenting in part)).

In support of their Motion for Summary Judgment, Defendants creatively argue that because "Plaintiff's insurance claim was paid in the amount it sought, plus interest, as of May 2, 2020, any fees and costs that Plaintiff incurs past May 2, 2020 cannot be deemed as necessary to collect on the contract-based claim." Defs.' Mem. 7. This argument is remiss. An attorney's services are necessary in a *Hayseeds* action when the insurer is forced to hire counsel to obtain payment on the insurance claim. *Compare Jordan*, 393 S.E.2d at 648–52 (attorney's services were necessary when insurer refused to offer any payment until a lawyer was retained and a lawsuit was filed), *and Mid-State Auto., Inc. v. Harco Nat'l Ins. Co.*, No. 2:19-CV-00407, 2019 WL 6130457, at *2 (S.D.W. Va. Nov. 18, 2019) (finding that attorney's services were necessary to obtain payment when insurer accused plaintiffs of arson, refused to pay claim for damages due to the fire, and settlement was only reached after plaintiffs hired an attorney to recover the benefits), *with Hadorn v. Shea*, 465 S.E.2d 194, 198 (W. Va. 1995) (finding attorneys services were not necessary where plaintiff refused to negotiate with insurer before trial).

Defendants' submission that Plaintiff no longer required the services of an attorney beyond May 2, 2020, has no basis in case law. Viewing the facts in the light most favorable to the nonmovant, Plaintiff has yet to obtain payment for the denied insurance claim. Accordingly, the Court cannot say, as a matter of law, that Plaintiff is not entitled to fees and costs beyond that date.

Finally, even if Defendants' argument was persuasive as to the Plaintiff's *Hayseeds* claim, Defendants failed to submit support for the argument that the *Hayseeds* attorney's fees analysis applies to UTPA claims. The Court postulates that it does not. While recovery under *Hayseeds* requires Plaintiff to "substantially prevail" on the underlying insurance claim, *see Hayseeds*, 352 S.E.2d at 74, success on a UTPA claim is based on proving that the insurer has a general business practice of violating the Act, *see McCormick v. Allstate Ins. Co.*, 475 S.E.2d 507, 519 (W. Va. 1996). It is unreasoned to suggest that payment of an insurance claim would somehow terminate a plaintiff's right to recover attorney's fees under the UTPA, when prevailing on the insurance claim is not an element of a UTPA action. *See id.*

## IV. CONCLUSION

In light of the foregoing, Defendants' Motion is **DENIED**. ECF No. 94. The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties.

ENTER: April 8, 2021

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE