IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

MOSES ENTERPRISES, LLC,

          Plaintiff,

v.                                                CIVIL ACTION NO.   3:19-cv-0477

LEXINGTON INSURANCE COMPANY and
AIG CLAIMS, INC.,
aka AIG COMMERCIAL PROPERTY CLAIMS,

          Defendants.

**MEMORANDUM OPINION & ORDER**

Before the Court is Plaintiff's Supplemental Memorandum in Support of Attorneys' Fees & Costs ("Pl.'s Suppl. Mem."). ECF No. 248. For the following reasons, the Court **GRANTS IN PART** the motion. The Court **ORDERS** and **ADJUDGES** Defendants liable to Plaintiff for $343,871.06 in attorneys' fees.[1]

**BACKGROUND**

Moses Enterprises, LLC sells cars. *See Moses Enter., LLC v. Lexington Ins. Co.*, 66 F.4th 523, 525 (4th Cir. 2023). To protect its business, Moses maintained an insurance policy with Lexington Insurance Company. *See id.* AIG Claims, Inc. served as claim administrator. *See id.*

While the insurance policy was in place, Moses sold a car to someone using a stolen identity. *See id.* The fraudster never paid. *See id.* When Moses discovered the sham, it filed a claim with AIG. *See id.* AIG denied coverage because Moses did not provide notice of the claim within

---

[1] The Court also considered Defendants' Response in Opposition to Plaintiff's Supplemental Memorandum in Support of Attorneys' Fees & Costs ("Defs.' Resp."), ECF No. 249, and Plaintiff's Reply to Defendants' Memorandum Opposing Attorneys' Fees & Costs ("Pl.'s Reply), ECF No. 251.

the policy's required period. *See id.* Moses sued. *See id.* Relevant here, Moses asserted Defendants breached the parties' insurance contract and violated the West Virginia Unfair Trade Practices Act ("UTPA"). *See id.* Moses sought "[d]amages for attorney fees." *Id.* (quotation omitted).

After discovery, the Court granted partial summary judgment for Moses on its breach of contract claim. *See id.* at 526. The Court did not resolve damages. *See id.* Nearly a year later, the Court denied Defendants' Motion for Summary Judgment. *See id.*

On the eve of trial, the parties settled their underlying dispute. *See id.* They did not settle attorneys' fees. *See id.* Litigation continued. In March 2022, the Court awarded $293,135.45 in attorneys' fees and costs to Plaintiff's counsel. *See id.* Defendants appealed. *See id.* The Fourth Circuit vacated this Court's decision and remanded for further proceedings. *See id.* at 530.

## LEGAL STANDARD

Parties to a civil controversy pay their own attorneys' fees unless a statute or contract "provid[es] for recovery" or case law "carves out an exception." *Am. Reliable Ins. Co. v. Stillwell*, 336 F.3d 311, 320 (4th Cir. 2003) (quotation omitted). In *Hayseeds, Inc. v. State Farm Fire & Cas.*, the West Virginia Supreme Court of Appeals carved out an exception for "prevailing claimants in property damage insurance cases." 352 S.E.2d 73, 79 (W. Va. 1986). "[W]henever a policyholder must sue [their] own insurance company over any property damage claim, and the policyholder substantially prevails in the action," the insurance company becomes "liable for the payment of the policyholder's reasonable attorneys' fees." *Id.* at 80. To determine the reasonableness of requested fees, the Court considers the factors outlined in *Aetna Cas. & Sur. v. Pitrolo*, 342 S.E.2d 156, 161–62 (W. Va. 1986).

## ANALYSIS

Plaintiff may recover attorneys' fees. *See Moses*, 66 F.4th at 527. The Court's analysis proceeds in three parts. *First*, the Court determines what type of work is compensable. *Second*, the Court considers Defendants arguments seeking to preclude Plaintiff from receiving fees after May 26, 2020. *Finally*, the Court calculates Plaintiff's fee award.

### I

The Fourth Circuit provided simple instructions on remand. The Court must "determine which portions of the requested fees were 'necessary to obtain payment of the insurance proceeds' and then award fees based on that work only." *Moses*, 66 F.4th at 529 (quotation omitted). In other words, the Court must separate work done for the breach of contract claim from work done for the UTPA claim. *See id.* at 528. Only work for the former is compensable. *See id.*

### A

The parties disagree which work is compensable. Plaintiff argues work for the breach of contract claim "cannot possibly be disentangled" from work under the UTPA because "no separate work was required to establish violations of the UTPA." Pl.'s Suppl. Mem. at 5. In other words, Moses' breach of contract claim "subsumed" its UTPA claim. Pl.'s Reply at 2.[2] Defendant argues the work for both claims work can—and should—be disentangled. *See* Defs.' Resp. at 12–13.

The Court agrees much of the work Plaintiff counsel performed for the UTPA claim is "so intertwined" with their work for the breach of contract claim that time spent on each claim "cannot be disentangled." *Moses*, 66 F.4th at 529. Yet the Fourth Circuit stressed a breach of contract claim

---

[2] In its Reply, Plaintiff also argues "[a]ll legal work for which fees were requested were to 'vindicate' Moses['] single claim for the damages it was entitled to receive as a consequence of [] Defendants' breach as alleged in Count One of the Complaint." Pl.'s Reply at 13. The Court rejects this characterization of the record. The record is replete with examples of Plaintiff counsel completing work to prove stand-alone violations of the UTPA. *See, e.g.*, *infra* Part III.A (discussing Plaintiff's requests for production seeking information primarily to support its UTPA allegations).

and a UTPA claim are "not" the same. *Moses*, 66 F.4th at 528. They are "wholly distinct." *McCormick v. Allstate Ins. Co.*, 475 S.E.2d 507, 514–15 (W. Va. 1996).

A breach of contract claim accuses the defendant of "breaching a first-party insurance contract." *Moses*, 66 F.4th at 528. It seeks to hold the insurer to its promises to the insured. A UTPA claim accuses the defendant of violating the West Virginia UTPA when handling a policyholder's insurance claim. It ensures uniformity within the insurance industry by encouraging insurers to follow the same procedures when administering claims. *See McCormick*, 475 S.E.2d at 514–15 (looking for a "general business practice" of "bad faith settlement"). An award of attorneys' fees for all work performed for the two claims erases this distinction. Accordingly, the Court rejects Plaintiff's argument its work for the two claims cannot be disentangled.

**B**

Undeterred, Plaintiff presses another theory. Because a plaintiff can seek punitive damages for breach of contract and a UTPA claim, Plaintiff argues awarding fees for work proving damages under the former should yield attorneys' fees for the latter. *See* Pl.'s Suppl. Mem. at 5 (explaining all issues in this case were "related"—including "proof of malice" required for punitive damages).

The Court is not persuaded. A plaintiff can seek punitive damages for a breach of contract claim and a UTPA claim. *See Hayseeds*, 352 S.E.2d at 80; *McCormick*, 505 S.E.2d at 459. *See also Raines v. Westfield Ins. Co.*, 2023 WL 5490161, at *9 (S.D. W. Va. Aug. 24, 2023) (explaining the "actual malice" standard for punitive damages applies to both breach of contract and UTPA claims); *Skiles v. Mercado*, 2016 WL 183921, at *10 (S.D. W. Va. Jan. 14, 2016) (similar).

Yet doing work towards proving punitive damages is not enough to secure attorneys' fees for UTPA work. While there are "similarities" between the criteria for punitive damages and the criteria for attorneys' fees, the West Virginia Supreme Court of Appeals has held the issues are

-4-

"separate and distinct" and "must be addressed separately." *Midkiff v. Huntington Nat. Bank W. Va.*, 511 S.E.2d 129, 131 (W. Va. 1998) (citing cases). In *Muzelak v. King Chevrolet, Inc.*, the Supreme Court of Appeals refused to award attorneys' fees "for work done to support theories justifying punitive damages." 368 S.E.2d 710, 717 (W. Va. 1988). Similarly, in *Lemasters v. Nationwide Mut. Ins. Co.*, the Supreme Court of Appeals rejected a "bright-line rule" that "a litigant against whom a finding of actual malice is made and against whom punitive damages are assessed should be required to pay the prevailing parties' attorneys' fees." 751 S.E.2d at 744. Such an "automatic award" of attorneys' fees would "eras[e]" the "distinction" between attorneys' fees and punitive damages. *Midkiff*, 511 S.E.2d at 131 n.5. *Cf. Int'l Union of Operating Eng., Local 150 v. Lowe Excavating Co.*, 870 N.E.2d 303, 324 (Ill. 2006) (warning against awarding attorneys' fees "under the guise of a punitive damages award").

In short, if a prevailing party cannot secure attorneys' fees every time a jury awards punitive damages, a prevailing party cannot secure attorneys' fees every time counsel *prepares* to prove punitive damages to a jury. *See Lemasters*, 751 S.E.2d at 744. Accordingly, the Court rejects Plaintiff's attempt to create a backdoor to attorneys' fees through punitive damages.

\* \* \*

Based on the above, the Court concludes it must separate Plaintiff counsel's breach of contract work from his UTPA work. Only the former is compensable. *See Moses*, 66 F.4th at 529.

## II

The parties also dispute the timeframe in which Plaintiff can seek attorneys' fees. Plaintiff argues it can seek fees for work throughout this litigation—including work on the fee litigation. *See* Pl.'s Suppl. Mem. at 9–10. Defendants argue Plaintiff cannot recover fees after this Court

issued its Memorandum Opinion & Order granting Plaintiff's Motion for Partial Summary Judgment on May 26, 2020. *See* Defs.' Resp. at 10–12. The Court agrees with Plaintiff.

A

A party, not the party's attorney, is entitled to attorney fees. *See Astrue v. Ratliff*, 560 U.S. 586, 598 (2010); *State ex rel. Owners Ins. Co. v. McGraw*, 760 S.E.2d 590, 597 (W. Va. 2014) (Davis, C.J.) ("A claim for attorneys' fees belongs to the litigant, not to his attorney.") (quotation omitted). Indeed, a fee award "controls what the losing defendant" must pay to the plaintiff—"not what the prevailing plaintiff must pay [its] lawyer." *Venegas v. Mitchell*, 495 U.S. 82, 86 (1990). Of course, once awarded, the attorney may collect the fees. *See Astrue*, 560 U.S. at 597–98 (recognizing the "practical reality" that "attorneys are the beneficiaries and, almost always, the ultimate recipient" of attorneys' fees).

When seeking attorneys' fees, the attorney must prove the reasonableness of its fees—a task that requires "time and effort." *Hollen v. Hathaway Elec., Inc.*, 584 S.E.2d 523, 528 (W. Va. 2003). If the attorney cannot receive compensation for those efforts, the "net effect would be to reduce the attorney's hourly rate for all the hours worked on the case." *Id.* As a result, courts routinely award attorneys' fees for litigating and defending a fee award on appeal. *See, e.g.*, *Trimper v. City of Norfolk, Va.*, 58 F.3d 68, 77 (4th Cir. 1995) (recognizing time spent "defending entitlement to attorneys' fees" is "properly compensable"); *Hyatt v. Heckler*, 807 F.2d 376, 383 (4th Cir. 1986) (authorizing "reasonable fee[s] for counsel's appellate services" on remand).

*Hayseeds* fee litigation provides no exception. So long as the policyholder substantially prevails, they can seek attorneys' fees. *See Fauble v. Nationwide Mut. Fire Ins. Co.*, 664 S.E.2d 706 (W. Va. 2008) (awarding appellate attorneys' fees to plaintiff for expenses incurred on appeal).

**B**

Defendants present two counterarguments. Neither persuades. Defendants first argue attorneys' fees should terminate on May 26, 2020—the date this Court issued its Memorandum Opinion & Order granting Plaintiff's Motion for Partial Summary Judgment. *See* Defs.' Resp. at 10–12. The Fourth Circuit rejected this argument. *See Moses*, 66 F.4th at 527–28. This Court repeats its rationale. The May 26th decision did not "obviate the need for further work," *Moses*, 66 F.4th at 527, to "obtain payment of the insurance proceeds," *Jordan*, 393 S.E.2d at 652. Moses did not know whether Defendants "would appeal the district court's ruling." *Moses*, 66 F.4th at 527. Moreover, the May 26th decision left open the question of damages—"invit[ing] further attorney time." *Id.* This question remained unanswered until settlement.

Defendants next argue Plaintiff should not receive fees for work completed in the fee litigation because "[a]bsolutely no part of the appeal" was "necessary to obtain payment of the insurance proceeds." Defs.' Resp. at 11. The Fourth Circuit rejected a this argument. This Court repeats its rationale. Yes, West Virginia law provides fee-shifting only for work "necessary to obtain payment of the insurance proceeds." *Jordan v. Nat. Grange Mut. Ins. Co.*, 393 S.E.2d 652, 653 (W. Va. 1990). Still, not all work done after settlement "inherently flunks" this test. *Moses*, 66 F.4th at 527. Accepting Defendants' argument would contravene the Fourth Circuit's decision.

Moreover, *Hayseeds* recognizes the "disparity of bargaining power between [the insurer] and policyholder" exacerbated by the "dynamics of the settlement bureaucracy." *Hayseeds*, 352 S.E.2d at 328. When an insurer contests a policyholder's claim, the insured must incur "the cost of compelling his insurer to honor its contractual obligation." *Id.* 79. This often means hiring counsel. What starts as a simple claim for insurance proceeds often becomes a "vexatious, time-consuming, expensive" lawsuit. *Id.* The insured gets the short end of the stick—they are "out"

consequential damages *and* attorneys' fees. *Id. Hayseeds* helps prevailing parties be made whole again by returning to them what their insurance policy should have prevented in the first place—attorneys' fees. *See Aetna*, 342 S.E.2d at 160.

Had Defendants met their contractual obligations, Moses would not have hired counsel to lead a multi-year lawsuit spanning several levels of the federal judiciary. *Miller v. Fluharty*, 500 S.E.2d 310, 324 (W. Va. 1997) (recognizing the insurer's decision to contest a claim "force[s]" the insured "to conduct depositions, settlement negotiations, prepare for trial[,] and generally engage in litigation"). This Court awarded attorneys' fees after the parties settled. *See Moses Enter., LLC v. Lexington Ins. Co.*, 2022 WL 609555, at *4 (S.D. W. Va. Mar. 1, 2022). Defendants appealed. *See Moses*, 66 F.4th at 524. The Court does not fault Defendants for exercising this right. But Defendants cannot preclude Plaintiff from receiving attorneys' fees for its appellate work just because they regret their appeal. *Cf. JP ex rel. Peterson v. Cnty. Sch. Bd.*, 641 F. Supp. 2d 499, 511 (E.D. Va. 2009) (noting "in a very real sense" defendants facing fee-shifting rules "assume the risk of raising attorneys' fee awards with appeals that do not render a suit unsuccessful") (citing *Nigh v. Koons Buick Pontiac GMC, Inc.*, 478 F.3d 183, 188–89 (4th Cir. 2007)).

### III

With the foregoing in mind, the Court calculates Plaintiff's fee award. Plaintiff requests $389,687.35. *See* Plaintiff's Motion for Attorneys' Fees & Expenses ("Pl.'s Mot."), Ex. 2 at 1, ECF No. 228-2 (totaling $293,135.45); Pl.'s Suppl. Mem., Ex. A at 1, ECF No. 248-1 (totaling $96,551.90). The parties do not dispute the reasonableness of plaintiff counsel's customary fee or hourly rate. *See* Pl.'s Suppl. Mem. at 7 n.*; Defs.' Resp. at 6. However, after reviewing the parties' submissions, the Court finds the following reductions warranted.[3]

---

[3] To calculate the award, the Court compared Plaintiff's fee invoices, *see* Pl.'s Mot., Ex. 2; Pl.'s Suppl. Mem., Ex. A, ECF No. 248-1, with Defendants' annotated spreadsheet, *see* Defs.' Resp., Ex. 1, ECF No. 249-1. The Court finds

**A**

The Court excises $9,822.50 as fees and costs Plaintiff counsel incurred to litigate its Motion to Compel Defendants to Produce Documents. *See* ECF No. 27. This work predominantly related to Plaintiff's UTPA claim. *See supra* Part I.A. Throughout its papers, Plaintiff emphasized its discovery requests "related to the Defendants' handling of Moses['] claim, their compliance with the Unfair Trade Practices Act," and their "general business practices." ECF No. 29 at 8. For example, Request No. 2 sought all intra-office and inter-office communications "relating to the initial or continued process of the Plaintiff's claim." *Id.* at 11. Request No. 4 sought "written standards" used by Defendants to administer Plaintiff's claim to determine if Defendant complied with W. Va. Code § 33-11-4 and W. Va. Code R. § 114-14-6. *Id.* at 13. Request No. 5 sought the "complete complaint log" required to be maintained under W. Va. Code § 33-11-4(10). *Id.* at 14. Request No. 7 sought training materials used to train Defendants' employees on the UTPA's requirements. *See id.* at 16–18. Request No. 16 sought all documents relating to audits and control checks "measuring compliance" with the UTPA. *Id.* at 26. This ancillary litigation sought documents unrelated to the breach of contract claim. *See supra* Part I.A.

**B**

The Court excises $23,772.00 as fees and costs incurred by retaining Vincent J. King. Mr. King's testimony related to Plaintiff's UTPA claim. Mr. King "limited" his opinions to "Count Two Violation of the West Virginia Unfair Trade Practices Act and Count Three Common Law

---

entries classified as "No Objection," "Mixed," and "Insufficient Evidence" "reflect[] work performed that was entirely reasonable and necessary for the prosecution of the plaintiff's *Hayseeds* claim." Pl.'s Mot., Ex. 13—Affidavit of William L. Mundy, Esq. ¶ 12, ECF No. 228-13. Accordingly, the Court awards these entries to Plaintiff as fees and costs. As to entries Defendants classify as "Bad Faith/*Hayseeds*," the Court agrees some entries should be excised. *See infra* Parts III.A–C. However, the Court finds the remaining entries under this category relate to plaintiff's breach of contract and UTPA claims such that this "time cannot be disentangled." *Moses*, 66 F.4th at 529.

Bad Faith." ECF No. 208-1. His report repeatedly references the UTPA claim and jury awards for similar UTPA suits. *See id.* at 4 n.14. It does not reference Plaintiff's breach of contract claim.

## C

The Court excises $630.00 for reviewing W. Va. Code § 33-46-1 (Third Party Administrator Statute) on September 15, 2020, *see* Pl.'s Mot., Ex. 2 at 8, and $240.00 for "review[ing] [] jury instructions and verdict forms used in previous bad faith/UTPA cases, in preparation for formulating and drafting jury instructions and special verdict form[s]" on June 22, 2021, Pl.'s Mot., Ex. 2 at 14. On their faces, theses entries related solely to Plaintiff's UTPA claim.

## D

As to Moses's request for appellate fees, the Court finds a reduction warranted. The "most critical factor" of an attorneys' fee award is the "degree of success obtained." *Hensley*, 461 U.S. at 436. Typically, when a plaintiff achieves "partial or limited success" on an issue, *id.*, the Court reduces the award by "identify[ing] specific hours that should be eliminated" or "simply reduc[ing] the award to account for the limited success," *id.* at 437. This rule applies to work completed for an appeal of a fee award. *See Comm'r, INS v. Jean*, 496 U.S. 154, 163 n.10 (1990). In practice, when courts find a plaintiff succeeded on only part of their appeal, they reduce the request for appellate fees by the same percentage as they reduce the initial attorneys' fees award. *See Mercer v. Duke Univ.*, 301 F.2d 454, 470 (W.D.N.C. 2004) (citing cases); *B. v. Morgan Hill Unified Sch. Dist.*, 2022 WL 4371003, at *11 (N.D. Cal. Sept. 21, 2022) ("Where fees awarded for work on the merits are reduced commensurate with the degree of success a party attains, a request for 'fees-on-fees' may be reduced to the same extent.") (citing sources). *Cf. Ohio Valley Env't. Coal, Inc. v. Wheeler*, 387 F. Supp. 3d 654, 663 (S.D. W. Va. 2019) (Chambers, J.) (declining certain fees because the plaintiffs did not "prevail beyond" their "achievement at the district court level").

Here, Moses achieved partial success on appeal. The Fourth Circuit agreed Plaintiff was entitled to attorneys' fees, *see Moses*, 66 F4th at 527, and rejected Defendants arguments trying to fix a specific date after which no fees could accrue, *see id.* at 527–28. Yet the Fourth Circuit rejected Moses's contention this Court "committed no legal errors" in its calculations. *Id.* at 528–29. To reflect this mixed result, the Court reduces the request for appellate fees by $11,351.79—the same reduction (~11.8%) the Court applies to Plaintiff's pre-appeal work.

### E

These reductions total $45,816.29. Accordingly, the Court awards Plaintiff counsel $343,871.06 in attorneys' fees and costs.

### CONCLUSION

The Court **GRANTS IN PART** Plaintiff Moses Enterprises, LLC's Motion for Attorneys' Fees & Expenses. The Court **ORDERS** and **ADJUDGES** Defendants liable to Plaintiff for $343,871.06 in attorneys' fees and costs. The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties.

ENTER: November 1, 2023

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE